IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK MITCHELL, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-2099-K |
| | § | |
| CHASE HOME FINANCE LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Chase Home Finance LLC's Motion for Summary Judgment, filed September 28, 2007. After review and consideration of the motion, response, reply, summary judgment evidence, and the applicable law, the court **grants** the motion, and dismisses Plaintiffs' claims with prejudice.

I.   **Factual and Procedural Background**

Plaintiffs Mark and Vakita Mitchell purchased a home located in Mesquite, Texas in April 2000. On April 20, 2000, they signed a promissory note (the "Note") payable to First Union Mortgage Corporation ("First Union") in the amount of $149,376. Plaintiffs agreed to make monthly payments on the Note. Concurrently with their signing the Note, Plaintiffs also executed a deed of trust ("Deed of Trust") to secure payment of the Note. The Deed of Trust encumbered the property located at 730 Garnet Drive, Mesquite, Texas (the "Property"). The Note and Deed of Trust were

subsequently assigned to Chase Manhattan Mortgage Corporation. Defendant Chase Home Finance LLC is the successor by merger to Chase Manhattan Mortgage Corporation. At all relevant times, Defendant has been the servicer on Plaintiffs' mortgage loan.

Plaintiffs defaulted on the Note in late 2000. On or about November 2, 2000, Defendant sent Plaintiffs an acceleration warning letter and notified Plaintiffs that the Note was in default. The acceleration warning letter informed Plaintiffs that they were in default on their loan, stated that failure to cure the default within 30 days would result in the entire balance becoming due under the terms of the Note and Deed of Trust, and advised them that emergency homeowner counseling was available. On December 19, 2000, Defendant sent Plaintiffs a letter notifying them that their account had been forwarded to an attorney to initiate foreclosure proceedings.

On or about April 19, 2001, Plaintiffs executed a Subordinate Mortgage, Subordinate Note, and Partial Claims Promissory Note (the "Partial Claim"), which was a loss mitigation option made available to them. In connection with the Partial Claim, funds were advanced on behalf of Plaintiffs in the amount needed to reinstate the delinquent loan. By December 2001, Plaintiffs were again past due on their mortgage. On December 27th of that year, Defendant sent Plaintiffs another letter stating that they were again past due, and enclosing information from HUD advising Plaintiffs how to

avoid a foreclosure. The letter further requested that Plaintiffs call Defendant as soon as possible.

Defendant sent Plaintiffs another acceleration warning letter on January 23, 2002, notifying them again that the Note was in default. This letter advised Plaintiffs that emergency homeowner counseling was available, and provided them with a number to call to obtain a list of HUD-approved agencies. On or about March 1, 2002, Defendant sent Plaintiffs another letter informing them that their account was being forwarded to an attorney to initiate foreclosure proceedings.

In April 2002, Plaintiffs requested a repayment plan from Defendant. Defendant sent them a repayment plan on the Note, which Plaintiffs executed on May 1, 2002 (the "Repayment Plan"). Plaintiffs admit that they agreed to make payments as specified in the Repayment Plan, but failed to do so. Plaintiffs filed for Chapter 13 bankruptcy relief in August 2002, and in October 2002, Defendant filed a Proof of Claim in Plaintiffs' bankruptcy case. On August 19, 2003, the bankruptcy court confirmed Plaintiffs' Chapter 13 repayment plan and ordered them to make payments to the bankruptcy trustee for 60 months, including payments for the amounts owed to Defendant. On August 26, 2003, the bankruptcy court signed an Agreed Order Conditioning Automatic Stay, which required Plaintiffs to cure certain post-petition arrearages owed to Defendant.

In October 2004, Plaintiffs requested a loan modification from Defendant. Defendant informed Plaintiffs on October 22, 2004 that their request for a loan modification was denied because they did not have the funds needed towards contribution. On July 31, 2006, Defendant filed a Notice of Termination of Automatic Stay Due to Failure to Cure Default in the bankruptcy case. Because Plaintiffs had failed to comply with the terms of the Agreed Order Conditioning Automatic Stay, the automatic stay was terminated.

In or around September 2006, Plaintiffs requested a workout option from Defendant on their default of the Note. Around that same time, Plaintiffs engaged third-party representative US Loss Mitigation Services ("US Loss") to discuss loss mitigation with Defendant on their behalf. Plaintiffs admit that US Loss was authorized to communicate with Defendant regarding loss mitigation, and they admit US Loss communicated with Defendant on their behalf regarding loss mitigation options. In October 2006, Defendant declined Plaintiffs' request for a workout option because Plaintiffs had failed to satisfy a judgment lien on the Property. After the automatic stay was lifted, Plaintiffs received a reinstatement quote from Defendant, which they felt was inaccurate. They then requested a copy of their payment history from Defendant, which was provided to them in December 2006.

Defendant contends that the payment history is accurate, because Plaintiffs's calculation of the amounts paid ignores the fact that numerous payments credited to

4

their account were subsequently reversed due to insufficient funds in their account. Plaintiffs also contend that the payment history is incorrect because Defendant allegedly charged them $1,884.11 twice, because a charge in that amount was included both in Defendant's proof of claim filed in the bankruptcy proceeding and in the payment history later generated by Defendant. However, as Defendant points out, neither the payment history nor the proof of claim shows a charge in that amount. Finally, Plaintiffs also contend that Defendant failed to credit them for all of the amounts paid by the bankruptcy trustee. Defendant responds that all trustee payments were properly credited.

On or about October 11, 2006, counsel for Defendant notified Plaintiffs that Defendant had accelerated the maturity of the Note and that a foreclosure sale would occur on November 7, 2006. Plaintiffs filed the instant case on November 6, 2006, and the foreclosure sale did not take place. Plaintiffs have had the use and possession of the Property in the time since this case was filed, without making any payments on the Note. Plaintiffs have pleaded claims for violations of HUD regulations, breach of contract, deceptive trade practices, violations of the Texas Debt Collection Practices Act, unreasonable collection efforts, and under the Texas Declaratory Judgments Act, and for specific performance. Defendant moves for summary judgment on all of Plaintiffs' claims.

## II. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

## III. Defendant's Motion for Summary Judgment

Defendant contends on summary judgment that there is no genuine issue of material fact as to any of Plaintiffs' claims, and that therefore it is entitled to judgment as a matter of law. The court agrees, and will address each of Plaintiffs' claims below.

A. HUD Regulations

Plaintiffs claim that by accelerating their mortgage, Defendant violated certain covenants contained in the Deed of Trust and required by HUD regulations. Seeking dismissal of this claim, Defendant argues that under the National Housing Act, 12 U.S.C. § 1701, *et seq.,* there is no private right of action available to a mortgagor for a mortgagee's noncompliance. The court agrees. As other courts have observed, the regulations promulgated under the National Housing Act govern relations between the mortgagee and the government, and give the mortgagor no claim for duty owed or for the mortgagee's failure to follow said regulations. *Roberts v. Cameron-Brown Co.,* 556 F.2d 356, 360-61 (5th Cir. 1977); *In re Miller,* 124 Fed. Appx. 152, 155 (4th Cir. 2005); *Leggette v. Washington Mutual Bank,* 2005 WL 2679699, *5 (N. D. Tex. 2005); *Baker v. Northland Mortgage Co.,* 344 F. Supp. 1385 (N.D. Ill. 1972). To the extent that Plaintiffs base their claim of wrongful acceleration on these regulations, it must be dismissed.

Moreover, even if Plaintiffs could sustain a claim against Defendant for alleged failure to comply with HUD regulations, Defendant would still be entitled to summary judgment on that claim. Plaintiffs allege that Defendant violated the regulations set forth by HUD because it did not conduct a face-to-face interview with them in accordance with 24 C.F.R. § 203.604. On its website, HUD states that a mortgagee must have a face-to-face meeting with a delinquent mortgagor, or make a reasonable effort to arrange such a meeting, before three monthly installments due on the mortgage

7

are unpaid. According to HUD, such a meeting must be conducted by personnel who are adequately trained to discuss the delinquency and appropriate loss mitigation options with the mortgagor. Recognizing that not all of a lender's branch offices are staffed with such personnel, HUD states that this requirement does not apply where the mortgagor does not live within a 200 mile radius of a servicing office.

Defendant has set forth evidence that its closest servicing office to Dallas is located in Monroe, Louisiana, which is outside a 200 mile radius of Plaintiffs' property. Plaintiffs have not controverted this proof, although they argue that Defendants maintain other branch offices within the Dallas area.. However, Plaintiffs have set forth no evidence that these nearer branches are servicing branches staffed with personnel trained to deal with the issue of mortgage delinquency and to discuss loss mitigation with the mortgagor. Thus, Defendant is entitled to summary judgment on Plaintiffs' claim that it violated the uniform covenants set forth in the Deed of Trust by failing to conduct a face-to face meeting.

Plaintiffs also claim that Defendant violated the Deed of Trust (and HUD regulations incorporated therein) by failing to make appropriate loss mitigation options available to them. Defendant seeks summary judgment on this claim, and has presented to the court competent proof of the various loss mitigation options it offered to Plaintiffs. Specifically, the record shows that Defendant sent Plaintiffs acceleration warning letters, advised them to seek emergency homeowner counseling, and permitted

8

Plaintiffs to execute a partial claim, for which they were advanced the funds necessary to bring their mortgage current. When Plaintiffs requested a repayment plan, Defendants sent them one, which Plaintiffs executed in May 2002. Plaintiffs have not disputed Defendants' evidence concerning the loss mitigation options it offered to them. The court will enter summary judgment on this claim.

### B. Breach of Contract

Defendant moves for summary judgment on this claim, arguing that it is merely a restatement of Plaintiffs claims for violations of the HUD regulations incorporated into the Deed of Trust. The court agrees. The parties agree that the only contracts between them are the Note and the Deed of Trust. In response, Plaintiffs argue that they were not in default, and therefore Defendant breached the Note and Deed of trust by accelerating the Note. This statement is simply unsupportable, as Plaintiffs admit that they were in default on their loan, and they have also failed to dispute Defendants' evidence of their delinquency. This claim must be summarily dismissed.

### C. DTPA

Plaintiffs also bring a claim under the DTPA, Tex. Bus. & Com. Code § 17.01, *et seq.* The elements of a DTPA action are 1) the plaintiff is a consumer; 2) the defendant engaged in false, misleading, or deceptive acts, and 3) these acts constituted a producing cause of the consumer's damages. Tex. Bus. & Com. Code § 17.50(a)(1); *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex. 1995). Defendant

9

argues that Plaintiffs cannot establish a DTPA claim because they are not consumers under the statute.

To be a "consumer" as defined by the DTPA, an individual must seek or acquire goods or services by purchase or lease, and the goods or services purchased or lease must form the basis of the complaint. Tex. Bus. & Com. Code § 17.45(4); *Melody Home Mfg. v. Barnes,* 741 S.W.2d 349, 351-52 (Tex. 1987); *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex. 1981). Numerous Texas courts have held that loan applicants do not qualify as consumers under the DTPA, and that borrowing money is not the acquisition of a good or service under the DTPA. *La Sara Grain Co. v. First Natl. Bank of Mercedes,* 673 S.W.2d 558, 566 (Tex. 1984); *Riverside Natl. Bank v. Lewis,* 603 S.W.2d 169, 173, 175-76 (Tex. 1980); *Fix v. Flagstar Bank, FSB,* 242 S.W.3d 147, 159-60 (Tex. App. – Fort Worth 2007, pet. filed).

Because Plaintiffs are not consumers as required by the statute, and the loan obtained by Plaintiffs is not a good or service under the DTPA, Plaintiffs cannot bring a DTPA action. Further, Plaintiffs admit that their relationship with Defendant is governed by the Note and the Deed of Trust. Under Texas law, a failure to perform a contractual obligation does not constitute an actionable misrepresentation under the DTPA. *Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist.,* 987 S.W.2d 50, 53 (Tex. 1998); *Crawford v. Ace Sign, Inc.,* 917 S.W.2d 12, 14 (Tex. 1996). Plaintiffs cannot recast their failed breach of contract claim as a claim under the DTPA. The court will

enter summary judgment for Defendant on this claim.

## D. Texas Debt Collection Practices Act

Plaintiffs also claim that Defendant violated the Texas Debt Collection Practices Act ("TDCA"). Under the TDCA, a debt collector may not use false, deceptive, or misleading representations that "misrepresent the character, extent, or amount of a consumer debt, or misrepresent the consumer debt's status in a judicial or government proceeding." Tex. Fin. Code § 392.304(a)(8). To establish such a claim, Plaintiffs must show that Defendant made a false or misleading assertion. Defendant contends that Plaintiffs cannot show that it made any sort of false or misleading statement to them. In response, Plaintiffs argue that Defendant "overcharged" them, and thus misrepresented the amount of a consumer debt as prohibited by section 392.304(a)(8) of the TDCA. The court finds that Plaintiffs have failed to raise a genuine issue of material fact concerning any alleged "overcharge" by Defendant. In fact, the summary judgment record shows quite the opposite – that Plaintiffs were (and still are) woefully behind on their house payments and have paid Defendant very little of the amount due. This claim must be dismissed.

## E. Unreasonable Debt Collection Efforts

Plaintiffs next claim is a common law claim for unreasonable debt collection efforts. Unreasonable debt collection efforts are defined as efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental

anguish and bodily harm. *Carlson v. Trans Union, LLC,* 2003 WL 21750706, *3 (N.D. Tex. 2003), *citing Woodrum v. Bradley,* 1990 WL 151264 (Tex. App. – Houston [14th Dist.] 1990, writ denied); *Connell v. Rosales,* 419 S.W.2d 673, 676 (Tex. App. – Texarkana 1967, no writ). Defendant seeks summary judgment on this claim. In response, Plaintiffs rely on *Pullins v. Credit Exchange of Dallas, Inc.,* 538 S.W.2d 681 (Tex. App. – Waco 1976, writ ref'd n.r.e.). In *Pullins,* the court held that continued debt collection efforts after a debt had been paid were unreasonable. *Id.* at 683.

Defendant argues that this case is distinguishable from *Pullins* and its holding. The court agrees. Here, it is undisputed that Plaintiffs were, and continue to be, in default on their mortgage loan. The summary judgment record further shows that Defendant sent Plaintiffs several acceleration warning letters, advised them to seek emergency homeowner counseling, and worked with them to provide loss mitigation options such as the Partial Claim and the Repayment Plan. Plaintiffs have presented no proof which would raise a genuine issue of material fact regarding any type of harassment or malicious conduct by Defendant in its debt collection efforts, or whether Defendant's attempts to collect the amounts owed by Plaintiffs were unreasonable. Accordingly, the court will enter summary judgment for Defendant on this claim.

    **F.    Texas Declaratory Judgment Act**

The parties agree that this claim does not form the basis of any cause of action brought by Plaintiffs. Further, as Defendant notes, this act is a procedural statute that

does not apply in federal court. Tex. Civ. Prac. & Rem. Code § 37.001, *et seq.*; *Camacho v. Tex. Workforce Comm'n,* 445 F.3d 407, 410-11 (5th Cir. 2006). Therefore, this claim must be dismissed.

G.   Specific Performance

Defendant argues that this claim must also be dismissed because it is not an independent cause of action, but rather is a remedy for breach of contract. *See Stafford v. Southern Vanity Magazine, Inc.,* 231 S.W.3d 530, 535 (Tex. App. – Dallas 2007, rev. denied) (specific performance is an equitable remedy for breach of contract, but is not a separate cause of action); *In re Absolute Resource Corp.,* 76 F. Supp.2d 723, 735 (N.D. Tex. 1999) (specific performance is a remedy for breach of contract). Here, the court has determined that Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim, so this remedy is unavailable. Plaintiffs' request for specific performance must also be dismissed.

H.   Attorneys' Fees

Finally, Defendant requests summary judgment on Plaintiffs' attorneys' fees claims, which were brought pursuant to the DTPA and the TDCA. The court has granted summary judgment for Defendant on both of these claims. Accordingly, Plaintiffs' claim for attorneys' fees must also be dismissed.

IV.   Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is

**granted**, and Plaintiffs' claims are hereby **dismissed with prejudice**. Judgment will be entered by separate document.

    **SO ORDERED.**

    Signed March 4th, 2008.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE